J-S81016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: K.G., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.G., FATHER | : | No. 1265 MDA 2017 |

Appeal from the Decree July 14, 2017
In the Court of Common Pleas of Centre County
Orphans' Court at No:  4155

| | | |
|---|---|---|
| IN RE: M.G., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.G., FATHER | : | No. 1266 MDA 2017 |

Appeal from the Decree July 14, 2017
In the Court of Common Pleas of Centre County
Orphans' Court at No:  2016-4156

BEFORE:   PANELLA, J., STABILE, J., and PLATT*, J.

MEMORANDUM BY STABILE, J.:                **FILED FEBRUARY 08, 2018**

E.G. ("Father") appeals from the decree entered July 14, 2017, which involuntarily terminated his parental rights to his minor twin daughters, K.G. and M.G. (collectively, "the Children"), born in December 2003.  Additionally, Father's counsel filed a petition to withdraw and brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978

_____

* Retired Senior Judge assigned to the Superior Court.

A.2d 349 (Pa. 2009). After careful review, we grant counsel's petition to withdraw and affirm.

We summarize the relevant factual and procedural history of this matter as follows. Father and D.G. ("Mother") are former spouses. N.T., 4/27/17, at 5. They separated, and later divorced, after Mother's minor daughter from a prior relationship accused Father of sexual abuse. *Id.* at 5, 13, 59. In January 2016, a jury convicted Father of numerous sexual offenses. *Id.* at 7; Exhibit P1 (report by guardian *ad litem*) at Exhibit A (Megan's Law Public Report).[1] Currently, Father is serving a minimum sentence of seventy-five years' incarceration.[2]

Following Father's incarceration, the Children visited him in prison. N.T., 4/27/17, at 8, 20. However, the visits ended after the Children expressed concern that Father was looking at them sexually. *Id.* at 8-9, 20-22. The

---

[1] Although the details are not entirely clear from the record, the jury also convicted Father of committing sexual offenses against his own half-sister in 2003, when she was fourteen years old. *See* N.T., 4/27/17, at 6-7, 28; Exhibit P1 at 7, Exhibit A.

[2] In its opinion, the orphans' court found that Father is serving a sentence of seventy-four years' incarceration, without specifying whether that is his minimum or maximum sentence. Orphans' Court Opinion, 7/14/17, at 2. There was conflicting evidence in the record concerning the length of Father's sentence. *See* Exhibit P1 at 2 (indicating that Father will serve a seventy-four year sentence); N.T., 4/27/17, at 39 (Father's counsel indicating that Father will be incarcerated "for at least 75 years"). However, it appears more likely that Father received a minimum sentence of seventy-five years' incarceration. Mother attached a copy of Father's court summary to her termination petitions. The summary indicates that Father received twenty-five to fifty year sentences for each of his crimes. *See* Petition to Terminate Parental Rights (K.G.), 6/13/16, at Exhibit B.

Children last saw Father in approximately December 2015, prior to his trial. *Id.* at 8. Meanwhile, Mother began a relationship with S.H. *Id.* at 11. Mother and the Children began living with S.H. in June 2016. *Id.* at 14-15. Mother and S.H. became engaged, and planned to marry in June 2017. *Id.*

On June 13, 2016, Mother filed petitions to involuntarily terminate Father's parental rights to the Children. The orphans' court conducted a termination hearing on April 27, 2017. On July 14, 2017, the court entered a decree terminating Father's parental rights. Father timely filed notices of appeal on August 11, 2017, along with concise statements of errors complained of on appeal. By order entered August 29, 2017, we consolidated the appeals *sua* sponte. On October 27, 2017, Father's counsel filed a petition to withdraw and an *Anders* brief in this Court.

Before reaching the merits of Father's appeal, we must address counsel's petition to withdraw. *See Commonwealth v. Rojas*, 874 A.2d 638, 639 (Pa. Super. 2005) ("'When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.'") (quoting *Commonwealth v. Smith*, 700 A.2d 1301, 1303 (Pa. Super. 1997)). This Court extended the *Anders* procedure to appeals from decrees involuntarily terminating parental rights in *In re V.E.*, 611 A.2d 1267 (Pa. Super. 1992). To withdraw pursuant to *Anders*, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has

determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing *Commonwealth v. Lilley*, 978 A.2d 995, 997 (Pa. Super. 2009)). With respect to the third requirement of *Anders*, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, an *Anders* brief must comply with the following requirements:

(1) provide a summary of the procedural history and facts, with citations to the record;
(2) refer to anything in the record that counsel believes arguably supports the appeal;
(3) set forth counsel's conclusion that the appeal is frivolous; and
(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

In the instant matter, Father's counsel filed a petition to withdraw, certifying that he reviewed the record and determined that Father's appeal is frivolous. Counsel also filed a brief, which includes a summary of the history and facts of the case, potential issues that could be raised by Father, and counsel's assessment of why those issues are frivolous, with citations to

- 4 -

relevant legal authority. Counsel provided Father a copy of the brief, and a letter advising him that he may obtain new counsel or raise additional issues *pro se*. Accordingly, counsel complied substantially with the requirements of **Anders** and **Santiago**. Therefore, we may proceed to review the issues outlined in the **Anders** brief. We must also "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Counsel's **Anders** brief raises the following issues for our review:

1. Whether the orphans' court committed an abuse of discretion or error of law when it concluded that [Mother] established grounds for termination of parental rights?

2. Whether the orphans' court committed an abuse of discretion or error of law when it concluded that it was in the best interest of the minor child to involuntarily terminate Father's parental rights?

**Anders** Brief at 6.

We review these claims mindful of our well-settled standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Father's parental rights pursuant to Sections 2511(a)(10), (11), and (b).[3] We need only agree with the court as to any one subsection of Section 2511(a), as well as Section

---

[3] Mother filed her termination petitions pursuant to Section 2511(a)(1) and (2). The orphans' court did not address Section 2511(a)(1) and (2) in its opinion, so it is not clear whether the court found that Mother met her burden under these subsections. With respect to Section 2511(a)(10) and (11), our legislature added these subsections to the Adoption Act on October 28, 2016, months after Mother filed her petitions on June 13, 2016. While Mother did not petition pursuant to Section 2511(a)(10) and (11), both her counsel and Father's counsel addressed these subsections during their closing arguments. Father's counsel did not contend at any point that Sections 2511(a)(10) and (11) were inapplicable.

2511(b), in order to affirm.  ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super.

2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).  Here, we analyze

the court's decision to terminate under Section 2511(a)(11) and (b), which

provide as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> > (11) The parent is required to register as a sexual offender under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders) or to register with a sexual offender registry in another jurisdiction or foreign country.[4]
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(11), (b).

Instantly, the orphans' court concluded that Mother presented clear and

convincing evidence with respect to Section 2511(a)(11).  Orphans' Court

---

[4] 42 Pa.C.S.A. Chapter 97 Subchapter H contains the Sex Offender Registration and Notification Act ("SORNA").  ***See*** 42 Pa.C.S.A. §§ 9799.10–9799.41.

Opinion, 7/14/17, at 9. The court found that Father was convicted of numerous sexual offenses, and that he will have lifetime registration and reporting requirements as a sexual offender. *Id.*

Our review of the record supports the findings of the orphans' court. During the termination hearing, Mother's counsel presented the testimony of the Children's guardian *ad litem*, Barbara Topinka, Esquire.[5] In addition, Mother's counsel provided the court a copy of Attorney Topinka's report, which the court admitted into evidence as Exhibit P1. N.T., 4/27/17, at 77. Exhibit P1 contains a copy of Father's "Pennsylvania State Police Megan's Law Public Report," which indicates that he is a sexually violent predator and lists his registration start date as May 2016. The report also lists Father's myriad convictions, including rape of an unconscious victim, rape of a child, statutory sexual assault, sexual assault, involuntarily deviate sexual intercourse, indecent assault, corruption of minors, and unlawful contact with a minor. Father's counsel made no effort to challenge this evidence, and conceded at the conclusion of the hearing that Father is required to register as a sexual offender. *Id.* at 81. Accordingly, we discern no abuse of discretion.

We next consider whether the orphans' court abused its discretion by terminating Father's parental rights pursuant to Section 2511(b).

> Section 2511(b) focuses on whether termination of parental rights
> would best serve the developmental, physical, and emotional

---

[5] The Children had both a guardian *ad litem* and legal counsel during the hearing.

needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (quotation marks and citations omitted)).

Here, the orphans' court concluded that Mother presented clear and convincing evidence that terminating Father's parental rights would best serve the Children's needs and welfare pursuant to Section 2511(b). Orphans' Court Opinion, 7/14/17, at 10. The court found that Father refuses to accept responsibility for his crimes, and that allowing ongoing contact between the Children and Father would pose a threat to the Children's physical and emotional safety. *Id.* at 10-11. The court further found that the Children are ashamed and fearful of Father, and that they have developed a strong bond with Mother's fiancé and his family. *Id.*

Our review of the record again supports the findings of the orphans' court. Concerning the Children's safety, Attorney Topinka testified that she interviewed Father, who admitted that he is attracted to "developed teenage girls," and that he had an "inappropriate relationship" with his victim, Mother's minor daughter. N.T., 4/27/17, at 29-30. However, Father did not admit that this relationship was wrong, and seemed to blame Mother's daughter for his crimes.[6] *Id.* at 46-47. Attorney Topinka testified that she also interviewed the Children's counselor, Nicole Carrita, and her coworker, Ashley Buck, who expressed concern that Father may have been "grooming [the Children] as potential next victims," and that any future contact between the Children and Father could be physically or emotionally harmful. *Id.* at 33-34, 40, 44-45.

Concerning the Children's relationship with Father, Attorney Topinka testified that the Children love Father, but that they are hesitant to talk about him. *Id.* at 34. She explained, "When I speak to [K.G.] and [M.G.] and they talk about their dad they do seem to be somewhat on the fence about their feelings and dealing with all these things. Sometimes they don't want to talk about it at all. Other times they will address it." *Id.* at 37. Nonetheless, Attorney Topinka testified that the Children do not want to see Father, and

---

[6] During his own testimony, Father admitted that his actions were "vile and disgusting," but insisted that he did not commit many of the crimes that he was convicted of, and that "I know I can prove at this point that I am only guilty of corruption, and, you know, maybe indecent exposure . . . ." N.T., 4/27/17, at 50, 69.

that any contact from Father "disturbs them greatly." ***Id.*** at 34, 40. Attorney Topinka described one incident during which Father sent a letter to the home of the Children's paternal grandmother, and the Children's cousin brought the letter to school and gave it to the Children. ***Id.*** at 42-43. Attorney Topinka reported that this incident was "very traumatizing for them." ***Id.*** at 43.

In contrast, Attorney Topinka testified that the Children have a very close relationship with Mother's fiancé, S.H. ***Id.*** at 36. She explained, "Both [K.G.] and [M.G.] refer to him as dad. They talk about their times with [S.H. and Mother] as family time. The girls also have developed very strong relationships with [S.H.'s] children. He has three children and they consider those children to be their siblings." ***Id.*** Ultimately, Attorney Topinka recommended that the orphans' court terminate Father's parental rights.[7] ***Id.***

Thus, the record confirms that terminating Father's parental rights will best serve the Children's needs and welfare. It is beyond cavil that Father poses a severe risk of harm to the Children due to his attraction to young girls and his refusal to accept responsibility for his numerous sexual offenses. While the Children continue to harbor some affection for Father, they do not want to visit with Father in prison and find any communication from him

---

[7] At the conclusion of the termination hearing, the Children's legal counsel, Daniel McKenrick, Esquire, reported that he spoke to the Children, and that they requested that the orphans' court follow the recommendation of Attorney Topinka, and terminate Father's parental rights. N.T., 4/27/17, at 78.

disturbing. Moreover, the Children have a positive relationship with Mother's fiancé, S.H. Terminating Father's parental rights will allow the Children to be adopted, and forge a new family life.[8]

Accordingly, our independent review of Father's claims demonstrates that they do not entitle him to relief. Moreover, our review of the record does not reveal any non-frivolous claims overlooked by counsel. *See Flowers*, 113 A.3d at 1250. We therefore grant counsel's petition to withdraw, and we affirm the July 14, 2017 decree.

Petition to withdraw granted. Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/08/2018

---

[8] The Adoption Act provides that, "[u]nless the court for cause shown determines otherwise," an individual may not adopt the child of a non-spouse unless that non-spouse first relinquishes his or her parental rights. *See* 23 Pa.C.S.A. § 2901; *In re M.R.D.*, 145 A.3d 1117 (Pa. 2016) (holding that the Adoption Act did not permit a grandfather to adopt his daughter's child without the daughter relinquishing her parental rights). As the orphans' court acknowledges, Mother and S.H. were not married at the time of the termination hearing on April 27, 2017, but planned to marry in June 2017. Thus, by the time the orphans' court entered its termination decree on July 14, 2017, Mother and S.H. would be married, and S.H. would be permitted to adopt the Children in accordance with the Adoption Act.